**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Criminal No. 22-419 (FAB) |
| **ELIGIO TRINIDAD-NOVA** | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

### I. Introduction

On September 28, 2022, Eligio Trinidad-Nova was charged with violations of 18 U.S.C. §922(g)(5) (prohibited person in possession of firearm and ammunition) and 8 U.S.C. §1325(a)(1) (improper entry by alien). Docket No. 12. Defendant filed a motion to suppress a firearm seized at his arrest and post-arrest statements. Docket No. 25. In support of the motion, Defendant submitted a declaration under penalty of perjury in which he stated that, on September 12, 2022, he arrived at his home and, after entering his property and climbing the stairs to his residence, was tased. Docket No. 25-1. That he fell to the ground and was placed under arrest and interrogated after declining to speak to law enforcement and requesting the presence of counsel. Id. The Government opposed. Docket No. 29.

The motion was referred to the undersigned for a Report and Recommendation. Docket Nos. 26, 47. An evidentiary hearing was held on October 16 and 17, 2023. See Docket Nos. 56, 58. The Government called Puerto Rico Police Department ("PRPD") Officers Angel Luis Ramos-Torres ("Ramos-Torres") and Yahaira Cruz-Concepción ("Cruz-Concepción"), both from the Property, Thefts, Assault and Missing Person Division of the CIC Caguas. Evidence was admitted. After carefully considering the evidence, the undersigned recommends that Defendant's motion to suppress be **DENIED**.

USA v. Trinidad-Nova
Criminal No. 22-419 (FAB)
Report and Recommendation

## II. Factual Background

The following account is drawn from the evidence, testimonial and documentary, received at the suppression hearing.

On September 12, 2022, Cruz-Concepción was to serve a citation for an interview of the Defendant in connection with an unrelated state investigation. Transcript of Hearing on October 16, 2023, at Docket No. 67 ("October 16 TR") at p. 14 ll. 2-22, p. 77 ll. 5-17; Transcript of Hearing on October 17, 2023, at Docket No. 69 ("October 17 TR") at p. 7 ll. 19-23; Joint Exhibit 1. Cruz-Concepción and Ramos-Torres went to 608 Artico Street in Puerto Nuevo, which they believed was Defendant's residential address. October 16 TR at p. 15 ll. 11-12, p. 17 ll. 17-19. Id. He lived on the second floor of the structure. Id. Ramos-Torres was wearing his PRPD identification and badge. Id. at p. 16 ll. 15. Cruz-Concepción was wearing a uniform which had the logo of the PRPD as well as her PRPD badge. Id. at p. 16 ll. 17-19, p. 78 ll. 13-18.

The Defendant was not there when Cruz-Concepción and Ramos-Torres arrived. They spoke to Defendant's neighbor, who identified the Defendant at his subsequent arrival. Id. at p. 48 ll. 11-14, p. 79 ll. 21-23. Defendant was driving a black Lexus and parked outside the residence, under a tent leading to a gate of the property. The vehicle's rear was on the sidewalk. Id. at p. 19 ll. 1-4, p. 22 ll. 9. This was around 12:00 noon. Id. at p. 79 ll. 21-23; Joint Exhibits 4 & 5. Cruz-Concepción and Ramos-Torres then crossed the street to approach the Defendant. Id. at p. 48 ll. 11-14, p. 81 ll. 4-6. The Defendant got out of the car and left the car door partially opened, while holding a phone to his ear. Id. at p. 23 ll. 8-16; October 17 TR at p. 14 ll. 8-25. The Defendant was holding the phone with his left hand. October 16 TR at p. 44 ll. 16-20; October 17 TR at p. 14 ll. 8-25. Cruz-Concepción started speaking to the Defendant, but the Defendant made a hand gesture for the agent to wait. October 16 TR at p. 23 ll. 8-10, p. 45 at ll. 3-5, p. 82 ll. 16-20. Cruz-Concepción told the Defendant that she was there to serve a citation, but the Defendant walked backwards towards the gate in front of the vehicle. Id. at p. 23 ll. 22-25, p. 49 at ll. 6-8, p. 83 ll. 3-7. Ramos-Torres moved in front of Cruz-Concepción, and again told the Defendant that that they were there to serve a citation and asked him not to leave. Id. at p. 24 ll. 8-11, p. 51 at ll. 22-25, p. 83 ll. 8-12. The Defendant turned half-way to open the gate. His shirt was lifted showing his waist. Id. at p. 24 ll. 12-16, p. 50 ll. 15-20, p. 54 ll. 9-15. The Defendant was wearing an untucked loose button-down shirt. Id. at p. 22, ll. 23-25; October 17 TR at p. 21 ll. 23-24. Ramos-Torres then saw

USA v. Trinidad-Nova
Criminal No. 22-419 (FAB)
Report and Recommendation

the butt of a firearm under Defendant's shirt and saw the Defendant trying to reach for the firearm in his waist. October 16 TR at p. 24 ll. 19-23, p. 51 ll. 4-7, p. 55 at ll. 8-14. Ramos-Torres grabbed the Defendant by the wrist. Id. at p. 25 ll. 15-19, p. 55 ll. 17-18. The Defendant and Ramos-Torres were both outside of the gate. Id. at p. 25 ll. 9-14, p. 83 ll. 21-25, p. 98 ll. 14-16. However, the gate opened, and both the Defendant and Ramos-Torres simultaneously fell into the patio of the property. Id. at p. 25 ll. 1-2, p. 26 ll. 1-13, p. 56 ll. 21-25, p. 83 ll. 13-25, p. 84 ll. 8-10; October 17 TR at p. 20 ll. 1-5. While on the ground, the Defendant continued to try to reach for the firearm on the right side of his waist. October 16 TR at p. 26 ll. 10-15, p. 84 ll. 19-21; October 17 TR at 26 ll. 15-17. There was a struggle. October 16 TR at p. 56 ll. 21-25, p. 84 ll. 8-10. Ramos-Torres yelled out to Cruz-Concepción, told her that the Defendant had a firearm, and Cruz-Concepción proceeded to apply the taser on the Defendant. Id. at p. 26 ll. 16-18, p. 59 at ll. 1-6, p. 84 ll. 19-25, p. 85 ll. 1-5. Ramos-Torres and Cruz-Concepción then restrained the Defendant. Id. at p. 27 ll. 1-2, p. 85 at ll. 10-15. A firearm was seized from the Defendant. Joint Exhibit 6C.

Ramos-Torres partially advised the Defendant of his rights under Miranda. October 16 TR at p. 28 ll. 5-8, p. 60 at ll. 7-15. But because it began to rain, the Defendant was moved to the inside of the police vehicle. Id. at p. 28 ll. 11-12, p. 60 at 7-12, p. 61 at ll. 6-10. Cruz-Concepción asked the Defendant for personal information (i.e., his name, date of birth, age, occupation, place of birth). Id. at 86 ll. 10-25, p. 87 ll. 1-9, p. 97 ll. 24-25, p. 98 ll. 1-2; October 17 TR at p. 33 ll. 8-25, p. 34 ll. 1-2. Because the Defendant gave Cruz-Concepción an identification from the Dominican Republic, Cruz-Concepción asked the Defendant whether he had a visa or a valid Puerto Rico identification. October 16 TR at p. 87 ll. 1-9, p. 97 ll. 24-25, p. 98 ll. 1-2; October 17 TR at p. 33 ll. 3-25, p. 34 ll. 1-2. The Defendant stated that he did not. Id. Cruz-Concepción read the Defendant his rights under Miranda. October 16 TR at p. 28 ll. 11-12, p. 60 at 7-12, p. 61 at ll. 6-10. The Defendant refused to sign the Miranda waiver form but told Cruz-Concepción that she could ask whatever she wanted. Id. at p. 28 ll. 16-18, p. 62 ll. 2-8, p. 87 ll. 12-16; October 17 TR at p. 37 ll. 1-23; Joint Exhibit 2. This occurred at 12:13 p.m. Joint Exhibit 2; October 17 TR at p. 36 ll. 21-23. Thereafter, the Defendant informed the agents that he did not have a firearm permit. October 16 TR at p. 89 ll. 1-3, p. 98 at ll. 6-8.

### III. Applicable Law and Analysis

#### A. The Firearm

The Fourth Amendment prohibits unreasonable searches and seizures in the absence of a warrant supported by probable cause. U.S. Const. amend. IV. A Fourth Amendment seizure occurs when a police officer has restrained the liberty of a citizen through physical force or show of authority. United States v. Camacho, 661 F.3d 718, 725 (1st Cir. 2011) (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)). "To determine whether an officer has restricted an individual's freedom of movement, courts determine the 'coercive effect of the encounter' by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter'". Camacho, 661 F.3d at 725 (citations omitted). The Court evaluates the totality of circumstances to determine whether a seizure has occurred. Id.

There is no question that, before Ramos-Torres saw the firearm, the Defendant had not been seized. In fact, the testimony of both agents is consistent in that the Defendant parked his car outside of the gate leading to the property and made a gesture for the agent to wait while he was on the phone, and that he walked backwards towards the gate while agents approached. See also Joint Exhibits 4 & 5. And that the agents were merely calling his name and telling him that they wanted to serve a citation. At that point, it is evident that the Defendant did not feel compelled to stop or restrained from leaving. Indeed, this is consistent with Defendant's declaration, where he expressed that he experienced the electric shock only after entering the property. See Docket No. 25-1 at ¶¶ 1-7. But there is also no question, that this changed when Ramos-Torres saw the firearm. That is, a reasonable person under the circumstances (having been grabbed by the wrist and fallen to the ground with Ramos-Torres) would not feel free to leave without complying with the instructions of law enforcement. At that moment, the Defendant was seized. Terry, 392 U.S. at 16 (whenever a police officer accosts an individual and restrains his freedom to walk away, the individual has been seized); United States v. Young, 105 F.3d 1, 7 (1st Cir. 1997) (physical contact of the defendant by the officer; defendant seized); United States v. Belin, 868 F.3d 43, 48 (1st Cir. 2017) (stop occurred when officer grabbed defendant's arm); United States v. Howard, 66 F.4th 33, 41 (1st Cir. 2023) (a seizure requires a show of authority or physical force).

The question is then "whether the officer's action was justified at its inception, and whether the stop was reasonably related in scope to the circumstances which justified the interference in

the first place." Terry, 392 U.S. at 20. An officer's action is justified at inception if it is reasonable under the circumstances. A seizure without a previous warrant is unreasonable unless it falls under one of very limited exceptions. Under Terry, a warrantless stop may be reasonable if the officer suspects that the person apprehended is committing or has committed a crime. Camacho, 661 F.3d at 726; United States v. Monteiro, 447 F.3d 39, 43 (1st Cir. 2006). A reasonable suspicion is necessary. Terry, 392 U.S. at 28; United States v. Jones, 700 F.3d 615, 621 (1st Cir. 2012). Reasonable suspicion is more than a mere hunch but less than probable cause. Howard, 66 F.4th at 44; Camacho, 661 F.3d at 726 (citation omitted); Jones, 700 F.3d at 621 (reasonable suspicion is an intermediate standard; its assessment depends on a practical, commonsense judgment based on the particular facts of each case). It requires a "particularized and objective basis for suspecting the person stopped of criminal activity.". Camacho, 661 F.3d at 726 (citation omitted). Therefore, to justify the stop, the suspicion must be "objectively reasonable" and "grounded in specific and articulable facts". Camacho, 661 F.3d at 726 (citation omitted); Terry, 392 U.S. at 21-22. The Government bears the burden of showing that a reasonable suspicion justified the stop. Monteiro, 447 F.3d at 43. The Court evaluates the existence of reasonable suspicion under the totality of circumstances. Howard, 66 4th at 44; Camacho, 661 F.3d at 726 (citation omitted); Jones, 700 F.3d at 621.

  Before Ramos-Torres saw the butt of the firearm, the Defendant was evasive but there was nothing particularly suspicious that could justify a stop. However, as testified, when the Defendant turned in front of the gate, Ramos-Torres saw that he started to reach for something in his waist, which the agent quickly identified as a firearm. These facts offer a particular and objective basis for Ramos-Torres to believe that the Defendant was armed and dangerous. See United States v. Tanguay, 918 F.3d 1, 5 (1st Cir. 2019) (sight of a gun in the driver-side door justified Terry stop); Schubert v. City of Springfield, 589 F.3d 496, 501-02 (1st Cir. 2009) (reasonable suspicion when officer saw a man carrying a gun in high crime area as he walked towards a public building); United States v. Young, 105 F.3d 1, 7-8 (1st Cir. 1997) (sight of a gun justified the Terry stop as reasonable). Defendant's attempt to reach for his waist and the sight of a gun, coupled with Defendant's initial evasiveness and avoidance of the agents, thus provided Ramos-Torres with reasonable suspicion to stop the Defendant. See United States v. Maguire, 359 F.3d 71, 77 (1st Cir. 2004) (lack of responsiveness and walking away from police officers are factors that could

contribute to a reasonable suspicion); Belin, 868 F.3d at 51; United States v. McCarthy, 77 F.3d 522, 531 (1st Cir. 1996) (evasive behavior may contribute to reasonable suspicion or heighten the suspicion).

But the inquiry under Terry does not end with a finding of reasonable suspicion. For the warrantless stop to be valid under Terry, "the scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983) (citations omitted). To find that it was, the stop must have been "temporary and last no longer than necessary to effectuate the purpose of the stop," and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id. 460 U.S. at 497 (citations omitted). The Government also bears the burden. Id.

As testified by Ramos-Torres, when he saw the butt of the firearm, he grabbed Defendant by the wrist, who immediately pulled backwards causing both men to fall on the ground. A struggle ensued in which the Defendant continued to reach for the firearm until he was tased and finally restrained. The firearm was seized. That is, the discovery of the gun was immediately after the initial physical contact with the Defendant and the struggle. There is nothing on the record to contradict this testimony. Indeed, the declaration submitted by the Defendant at Docket No. 25-1 ignores any events after the parking of Defendant's car and skips to the part when he was tased.[1] And Cruz-Concepción's testimony was entirely consistent with that of Ramos-Torres. The law is clear that a concern regarding an officer's safety is a legitimate factor in assessing the appropriateness of the action taken. United States v. Stanley, 915 F.2d 54, 57 (1st Cir. 1990). Police are allowed to assure themselves that the person who has been stopped is not armed with a weapon that could be used. Terry, 392 U.S. at 23. "When the officer has a reasonable belief 'that the individual whose suspicious behavior he is investigating at close range is armed and presently

---

[1] Defendant posits that he was seized in his property after he entered through the gate and was climbing the stairs to his residence. Docket No. 25-1. But the evidence introduced during the hearing contradicts this account. Both agents testified that the Defendant parked his car outside of the property when he arrived. This is consistent with Defendant's declaration. The photographs of the residence show that there is a gate to the property and that the car was parked outside the gate. If the agents were outside the property (speaking to Defendant's neighbor) when the Defendant arrived, the only logical inference is that the contact with the Defendant occurred outside the property and before he went through the gate of the property. Furthermore, the photographs presented during the hearing show that the stairs to the residence are far removed from the gate. If Ramos-Torres grabbed the Defendant's wrist outside of the gate the only logical conclusion is that the struggle would have ensued close thereby and not at the stairs which were **at least** 12-feet away. See Exhibit 6D; October 16 TR at p. 35 ll. 1-5 (the stairs to the residence were approximately 12 feet away from the gate).

dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" Michigan v. Long, 463 U.S. 1032, 1047 (1983) (quoting Terry, 392 U.S. at 24). It would also be unreasonable, as proposed by the Defendant (see Docket No. 75 at p. 10), to require that amidst a struggle to try to stop the Defendant from reaching for the firearm, that Ramos-Torres be required to inquire whether Defendant legally possessed the firearm. See United States v. Pontoo, 666 F.3d 20, 31-32 (1st Cir. 2011) (rejecting similar argument when officers did not ask the defendant whether he had a permit, the defendant did not claim to possess a permit, and there was no evidence that a permit was ever issued to the defendant). As such, grabbing the Defendant's wrist and then attempting to restrain the Defendant so that he could not reach for the firearm in midst of a struggle, was reasonable in scope and carefully tailored to address the suspicion that the Defendant possessed a firearm and intended to access it. See October 16 TR at p. 56 ll. 14-17 (Ramos-Torres was concerned for his safety and that of Cruz-Concepción); see e.g., Stanley, 915 F.2d at 57 (where defendant ignored the order to freeze and lunged toward passenger's side of the car, officers were justified in removing the defendant from the car; no constitutional violation); Young, 105 F.3d at 7-8 (sight of a gun justified the stop, which was reasonable in scope after the officer lunged at defendant). There was no Fourth Amendment violation. There is no reason to suppress the firearm seized from the Defendant.

    B.    The Statements

Pursuant to the Fifth Amendment of the U.S. Constitution, no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Premised on this constitutional right, in Miranda v. Arizona, 384 U.S. 436, 444 (1966), the U.S. Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." United States v. Lugo Guerrero, 2005 WL 8163207, at *6 (D.P.R. Oct. 14, 2005). The procedural safeguards under Miranda require that the suspect be adequately and effectively appraised of his rights, and that the exercise of those rights be honored by law enforcement. Missouri v. Seibert, 542 U.S. 600, 608 (2004). To be sure, Miranda not only requires that the suspect be informed of his rights but that police respect the suspect's decision to exercise any such rights and cease questioning immediately

upon the assertion of rights. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Therefore, the Fifth Amendment privilege against self-incrimination requires that, prior to questioning a suspect, the police appraise the suspect of his right to remain silent and to have counsel present during questioning, that counsel could be appointed free of charge, and of the state's intention to use any of his statements to secure a conviction. Moran v. Burbine, 475 U.S. 412, 420 (1986) (discussing Miranda, 384 U.S. at 468-470, 473-474). For a suspect to properly invoke his right to counsel, he must do so unambiguously and unequivocally. Davis v. United States, 512 U.S. 452, 458-459 (1994). The inquiry is an objective one—that a reasonable officer under the circumstances would understand the suspect's request as one for counsel. Id. To invoke the right to remain silent, an accused must also do so unambiguously. Berghuis v. Thompkins, 560 U.S. 370, 381 (2010). Merely remaining silent is insufficient. Id. at 382.

After an invocation of rights under Miranda, those rights can nonetheless be waived. United States v. Downs-Moses, 329 F.3d 253, 267 (1st Cir. 2003). Any such waiver is valid when made voluntarily, knowingly, and intelligently. Moran, 475 U.S. at 421. The Court is required to presume that a defendant did not waive his Miranda rights. Downs-Moses, 329 F.3d at 267 (citation omitted); United States v. Carpentino, 948 F.3d 10, 26 (1st Cir. 2020). The burden is on the Government to prove a valid waiver by the preponderance of the evidence. Id.; Colorado v. Connelly, 479 U.S. 157, 168 (1986); Carpentino, 948 F.3d at 26. The inquiry is two-fold: (1) the relinquishment of rights must be a free and deliberate choice, absent intimidation, coercion, or deception, and (2) the waiver must be made with full awareness of the nature of the rights being abandoned and of the consequences of such abandonment. Moran, 475 U.S. at 421 (citations omitted); Carpentino, 948 F.3d at 26.

The statements at issue in this case are those obtained from the Defendant by the agents of the PRPD. The Government is not contesting the suppression of any statements given by the Defendant to agents of Homeland Security Investigations. October 17 TR at p. 52 ll. 4-20. During the hearing, PRPD agents testified that when the Defendant was restrained Ramos-Torres partially gave Defendant verbal Miranda warnings. However, it started to rain, and the agents moved the Defendant inside the police vehicle. Cruz-Concepción then asked the Defendant some initial questions. When the Defendant gave the agents an identification from the Dominican Republic, Cruz-Concepción asked for a valid Puerto Rico identification. The Defendant informed the agents

that he did not have a visa to be in the United States. Cruz-Concepción then read the Defendant the PRPD Miranda form at Joint Exhibit 2. The Defendant refused to sign the form. But as testified at the hearing, he expressed that they could ask him questions. The Defendant then informed the agents that he did not have a license to carry a firearm.

The evidence presented during the hearing supports a conclusion that Defendant's post-arrest statements to PRPD agents (pertaining to not having a visa to be in the United States and not possessing a firearm license) were not elicited in violation of Defendant's rights. Even if we assume that the original verbal Miranda warnings imparted by Ramos-Torres were insufficient, the questions pertaining to place of origin or a valid Puerto Rico identification by Cruz-Concepción before reading the PRPD Miranda form are routine booking questions and not part of an interrogation. Routine booking questions are not considered interrogation and therefore do not require Miranda warnings. United States v. Sánchez, 817 F.3d 38, 44–45 (1st Cir. 2016). Routine booking questions are those that are biographical and not reasonably likely to elicit incriminating statements. Id. at 45; Pennsylvania v. Muniz, 496 U.S. 582, 600–02 (1990) (questions regarding defendant's name, address, height, weight, eye color, date of birth, and current age—did not constitute custodial interrogation). These include questions on information that is necessary to complete booking or pretrial services not intended to elicit information for investigatory purposes. Id.; United States v. García-Zavala, 919 F.3d 108, 113 (1st Cir. 2019) (questions regarding personal identifying statements, date of birth and country of origin not subject to Miranda); United States v. Paxton, 848 F.3d 803, 813 (7th Cir. 2017) (soliciting name, birth date, age, and place of residence not the sort of questions that one would expect to yield incriminating information). Cruz-Concepción's questions pertaining to a valid Puerto Rico identification, which were unrelated to Defendant's possession of a firearm, were routine and not part of a custodial interrogation. October 17 TR at p. 33 ll. 8-25 (the intent was to validate or corroborate the Defendant's identity). See e.g., Sánchez, 817 F.3d at 46 (no link between the biographical question and the criminal activity under investigation; no Miranda violation).

Defendant's statement pertaining to not having a firearm permit was obtained after Cruz-Concepción read the Defendant the PRPD Miranda form. As testified, the Defendant was read and explained the form and was asked whether he understood the warnings contained therein. October 17 TR at 36 ll. 21-25. He refused to sign the form but said he could be asked questions. The right

to counsel and to remain silent cannot be invoked solely by refusing to sign a form. See United States v. Oehne, 698 F.3d 119, 123 (2d Cir. 2012). The law requires that such an invocation of rights be made unequivocally, and mere silence is insufficient. Berghuis v. Thompkins, 560 U.S. at 382. Furthermore, even if the Court were to find that Defendant did invoke his right to counsel or to remain silent, he nonetheless waived those rights when he expressed that the agents could ask questions and proceeded to answer the questions. There is no requirement that the Miranda warnings or that a Miranda waiver be made in writing. See United States v. Montgomery, 714 F.2d 201, 203 (1st Cir. 1983); United States v. Gell-Iren, 146 F.3d 827, 830 (10th Cir. 1998) (citation omitted). Furthermore, in this case, there is absolutely no evidence of police coercion, which is a necessary element for a finding involuntariness in waiving rights under Miranda. Connelly, 479 U.S. at 167; United States v. Boskic, 545 F.3d 69, 78 (1st Cir. 2008). And there is evidence that the Defendant was given Miranda warnings, that the warnings were explained, that he was asked whether he understood his rights, and that he informed agents that they could ask questions. To find that a waiver of Miranda rights has been knowingly and intelligently, it is not necessary that the suspect know and understand every possible consequence of waiving the privilege against self-incrimination. Lugo Guerrero, 2005 WL 8163207, at *7 (quoting Colorado v. Spring, 479 U.S. 564, 574 (1987)). Rather, what is required is that the suspect be aware of his rights not to talk to law enforcement, to talk only in the presence of counsel, or to discontinue talking at any time. Id. Defendant was made aware of his rights but decided to allow for questions and gave answers to the agents. There is no basis to suppress Defendant's statement that he did not possess a firearm permit.

### IV.     Conclusion

For the reasons discussed above, Defendant's motion to suppress at Docket No. 25 should be **DENIED.**

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed within fourteen (14) days of its receipt. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to review by the District Judge and of

appellate review. <u>Thomas v. Arn</u>, 474 U.S. 140, 154-155 (1985); <u>Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992).

    In San Juan, Puerto Rico, this 16th day of January 2024.

                                         <u>s/Giselle López-Soler</u>
                                         GISELLE LÓPEZ-SOLER
                                         United States Magistrate Judge