IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**

ELIGIO TRINIDAD-NOVA [1],

    **Defendant.**

**Criminal No.** 22-419 (FAB)

## OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION
## AND DENYING MOTION TO SUPPRESS

BESOSA, District Judge.

Before the Court is defendant Eligio Trinidad-Nova ("Trinidad")'s motion to suppress evidence and post-arrest statements pursuant to the Fourth Amendment. (Docket No. 25.) The Court referred this matter to Magistrate Judge Giselle López-Soler for a report and recommendation ("R&R"). (Docket Nos. 26 and 47.) The magistrate judge held an evidentiary hearing, (Docket Nos. 56 and 58), and issued a thorough R&R recommending that the Court deny Trinidad's motion to suppress. Docket No. 77; see United States v. Trinidad-Nova, Case No. 22-419, 2024 U.S. Dist. LEXIS 11202 (D.P.R. Jan. 16, 2024) (López-Soler, Mag. J.). Trinidad objected, and the United States did not respond. (Docket No. 86.) For the reasons set forth below, the R&R is **ADOPTED.**

(Docket No. 77.)   Accordingly, Trinidad's motion to suppress is **DENIED.**   (Docket No. 25.)

## I.   Background[1]

On September 12, 2022, Puerto Rico Police Bureau ("PRPB") Officers Ángel Luis Ramos-Torres ("Ramos") and Yahaira Cruz-Concepción ("Cruz") attempted to serve Trinidad with a citation regarding an unrelated state investigation.   Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *6.   Trinidad's residence of record is 608 Ártico Street in Puerto Nuevo, Puerto Rico.   Id.   The officers drove to this address, but Trinidad "was not there."   Id.   Officers Ramos and Cruz spoke with a neighbor who identified Trinidad as he arrived at 608 Ártico Street in a black Lexus.   Id.

At approximately 12:00 p.m., Trinidad parked his Lexus "under a tent leading to a gate of the property."   Id.   Officers Ramos and Cruz crossed the street to approach Trinidad.   Id.   He stepped outside the Lexus, left the front door partially opened, and held a cellular phone to his ear.   Id.   Officer Cruz, dressed in a PRPB uniform with police insignia and a badge, attempted to speak with Trinidad.   Id.   Trinidad dismissed Officer Cruz, "[making] a hand gesture for [her] to wait."   Id.   Officer Cruz informed Trinidad

---

[1]   Immigration and Customs Enforcement Task Force Officer Osvaldo Ortega ("Ortega") prepared an affidávit in support of the criminal complaint (Docket No. 1, Ex. 1.)   The following facts derive from the R&R and Officer Ortega's affidávit.   (Docket No. 1, Ex. 1;   United States v. Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202.)

that "she was there to serve a citation, but [he] walked backwards towards the gate in front of the vehicle." Id. Officer Ramos again told Trinidad "that they were there to serve a citation and asked him not to leave." Id.

Trinidad's shirt lifted as he turned to open the gate, exposing the butt of a firearm. Id. at *7. Officer Ramos then observed Trinidad reach for the weapon. Id. He immediately grabbed Trinidad by the wrist, but Trinidad resisted. Id. Officer Ramos and Trinidad "simultaneously fell [from the sidewalk onto] the patio of the property." Id. Trinidad "continued to reach for the firearm on the right side of his waist." Id. Officer Ramos "yelled out" to Officer Cruz, informing her that Trinidad possessed a firearm. Id. Officer Cruz discharged her taser gun to subdue Trinidad. Id. The officers subsequently seized a Glock 26, 9 mm caliber pistol, a Glock 9mm caliber pistol magazine, and 12 rounds of 9mm caliber ammunition. (Docket No. 1, Ex. 1 at p. 2.)

Officers Ramos and Cruz arrested Trinidad, "partially [advising]" him of his right to remain silent. Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *7. Because it began to rain, however, the officers "placed Trinidad inside the police vehicle." Id. The officers then asked for Trinidad's personal information, including his name, date and place of birth, age, and occupation. Id. Because Trinidad provided the officers with an identification

card from the Dominican Republic, Officer Cruz inquired whether
Trinidad possessed a visa or valid Puerto Rico identification.
Id.  Trinidad stated that he did not.  Id.

Officer Cruz provided Trinidad with the Miranda warnings.
Id.  He refused to sign the waiver form, but informed Officer Cruz
"that she could ask whatever she wanted."  Id.  Trinidad then
informed the officers that he did not have a firearms permit.  Id.
at pp. 3-4.[2]

A grand jury returned an indictment on September 29, 2022,
charging Trinidad with being a prohibited person in possession of
a firearm and ammunition in violation of 18 U.S.C. § 922(g)(5)
(count one), and improper entry into the United States by an alien,
in violation of 8 U.S.C. § 1325(a)(1) (count two).  (Docket
No. 12.)

Trinidad moved to suppress the firearm and his post arrest
statements.  (Docket No. 25.)  Magistrate Judge López-Soler
conducted a two-day suppression hearing, where Officers Ramos and
Cruz proffered extensive testimony regarding Trinidad's arrest and
possession of the firearm.  (Docket Nos. 56 and 58.)  The parties
filed post-hearing briefs.  (Docket Nos. 73 and 75.)  Magistrate

---

[2]  Homeland Security Investigations ("HIS") agents interviewed Trinidad
approximately three hours after his arrest.  (Docket No. 25 at p. 3.)  The
United States concedes that statements made during this interview should be
suppressed.  (Docket No. 77 at p. 8.)  Accordingly, the Court need not address
the admissibility of this evidence.

Judge López-Soler then issued the concomitant R&R on January 16, 2024, recommending that Trinidad's motion to suppress be denied. (Docket No. 77.)   Trinidad "objects to the several [alleged] factual and legal conclusions contained in the R&R."   (Docket No. 86 at pp. 1-2.)

## II.  Standard of Review

A district court may refer a pending motion to a magistrate judge for a report and recommendation.   <u>See</u> 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b).  A party may file written objections to the magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); Loc. Rule 72(d).

A party that files a timely objection is entitled to "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  An issue not raised before the magistrate judge may be deemed waived by the district court.  <u>Borden v. Sec. of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987); <u>see also</u> <u>Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.").

In conducting its review, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see Loc. R. 72(d); Álamo-Rodríguez v. Pfizer Pharms., Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. See Templeman v. Chris Craft Corp., 770 F.2d 245, 247-48 (1st Cir. 1985); Hernández-Mejías v. Gen. Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.).

## III. Discussion

Trinidad sets forth four objections to the R&R. (Docket No. 86. at p. 3.) First, he argues that Officers Ramos and Cruz detained him "prior to the alleged viewing of the gun." Id. Second, Trinidad contends that "he never reached for the gun prior to being physically seized." Id. at p. 7. Third, he disputes that "statements made following the arrest were voluntary and knowingly made." Id. at p. 3. Finally, Trinidad avers that his post-arrest statements are "fruit of the poisonous tree." Id. Trinidad's four arguments are all unavailing.

### A.  Trinidad's Unlawful Arrest Objection

Officers Ramos and Cruz purportedly "trapped [Trinidad] between his vehicle, the wall, and the locked gate."  (Docket No. 86 at p. 4.)  By doing so, Trinidad argues, the officers executed an arrest without probable cause.  Id.  Accordingly, the dispositive inquiry is whether Officers Ramos and Cruz seized Trinidad by approaching him on a public street.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures."  U.S. CONST. amend. IV.  Not every encounter with law enforcement is, however, a violation of the Fourth Amendment.  United States v. Smith, 423 F.3d 25, 28 (1st Cir. 2005).  A warrantless arrest is permissible "where there is probable cause to believe that a criminal offense had been or is being committed."  French v. Merrill, 15 F.4th 116, 124 (1st Cir. 2021) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)).

A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  United States v. Mendenhall, 446 U.S. 544, 552 (1980) (opinion of Stewart, J.).  "If the encounter amounts to more than a minimally intrusive interaction, a seizure occurs, either a de facto arrest requiring probable cause or an investigative (or Terry) stop necessitating reasonable suspicion."

United States v. Ford, 548 F.3d 1, 3, (1st Cir. 2008).  Courts analyze whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave."  Michigan v. Chestnut, 486 U.S. 567, 573 (1988) (adopting the standard set forth in Mendenhall, noting that courts "assess the coercive effect of police conduct, taken as a whole, rather than focus on particular details of that conduct in isolation"); see Ford, 548 F.3d at 8 ("To constitute a seizure, this Circuit requires one's liberty to be restrained by either physical force or an assertion of authority.").  Relevant factors include, but are not limited to, the following:  "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  Ford, 548 F.3d at 10 (quoting Mendenhall, 446 U.S. at 554).

        Magistrate Judge López-Soler held that "[Trinidad] had not been seized" before "[Officer Ramos] saw the firearm." Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *7.  This Court agrees with the magistrate judge.  Trinidad alleges that a police officer approached him on a public street, the officer requested to speak with him, but Trinidad continued "walking from [his] vehicle to [his] residence."  (Docket No. 25, Ex. 1) (Trinidad's

Declaration in Support of the Motion to Suppress).  By his own admission, Trinidad remained free to leave the vicinity.  His rendition of facts itself demonstrates the absence of coercion.

Officers Ramos and Cruz both testified that Trinidad "made a gesture for [them] to wait while he was on the phone and that he walked backwards towards the gate while agents approached." Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *7-8.  The officers "merely [called] his name and [told Trinidad] that they wanted to serve a citation."  Id.  Officer Cruz discharged her taser gun only after Trinidad reached for his firearm.  Id.  The officers' actions preceding exposure of the firearm do not constitute a "show of authority," or a restriction on Trinidad's ability to leave the location.  Mendenhall, 446 U.S. at 552; see Ford, 548 F.3d at 12 (finding no seizure where law enforcement officers drove to the defendant's location, asked questions in a non-threatening manner, and did not draw their weapons); Smith, 423 F.3d at 30 (finding no seizure when officers "exited their car, [. . .] merely approached Smith requesting his identification, or even just his name"); United States v. Drayton, 536 U.S. 194, 200-01 (2002) ("Law enforcement officers to not violate the Fourth Amendment's prohibition on unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.") (citation and

quotation omitted).   Consequently, Trinidad's unlawful seizure argument is meritless.

Trinidad also contends that a "Terry stop [. . .] never occurred in [this] case."  (Docket No. 86 at p. 8.)  In Terry v. Ohio, the Supreme Court held that law enforcement officers may "briefly detain an individual for questioning if the officer 'reasonably suspects that the person apprehended is committing or has committed a crime.'"  United States v. Camacho, 661 F.3d 718, 726 (1st Cir. 2011) (citing Terry, 392 U.S. 1 (1968)).  Law enforcement officers are permitted to search a suspect during a valid Terry stop when they have "some articulable, reasonable suspicion that the persons stopped may be dangerous."  See United States v. Tiru-Plaza, 766 F.3d 111, 115 (1st Cir. 2014) (citation omitted); see also United States v. Pontoo, 666 F.3d 20, 30 (1st Cir. 2011) ("In a world fraught with peril, officer safety must have a place at the forefront of police work.  It follows logically that a pat-frisk may accompany an investigatory stop whenever an officer has reason to believe that the suspect is armed and dangerous.") (internal quotation marks and citation omitted).

To assess the validity of a Terry stop, the Court must consider whether (1) reasonable suspicion justified the stop at its inception, and (2) whether the actions of law enforcement officers during the stop were reasonably related in scope to the

circumstances justifying the stop.  See Tiru-Plaza, 766 F.3d at 119.  The Court's inquiry is guided by a "totality of the circumstances," and is based on objective criteria, not the officer's subjective motives.  United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004).  As the First Circuit Court of Appeals has observed, "reasonable suspicion is more a concept than a constant: it deals with degrees of likelihood, not with certainties or near certainties . . . [and] makes due allowance for police officers to draw upon their experience and arrive at inferences and deductions that may well elude an untrained person."  United States v. Arnott, 758 F.3d 40, 44 (1st Cir. 2014) (internal quotation marks and citation omitted).

The magistrate judge correctly held that Officers Ramos and Cruz had "a particular and objective basis [. . .] to believe that the Defendant was armed and dangerous."  Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *9-10.  Trinidad reached for the firearm in his waistband, placing the officers in peril and providing a reasonable suspicion of criminal activity.  Id. (citing cases); see United States v. Trullo, 809 F.2d 108, 113-14 (1st Cir. 1987) ("The officer had reasonable grounds to believe that appellant was armed and dangerous.  He also resisted when Officer Ramos grabbed his wrist.  It was therefore imperative, for the safety of the officers and the general public, that the officer [reach into

appellant's pocket to seize his firearm].").  Accordingly, the seizure of Trinidad's firearm comports with the Fourth Amendment and provides no basis for the suppression of this evidence.

### B.    Trinidad's Factual Objection

Trinidad "objects to the factual conclusion that he was reaching for anything in his waist."  (Docket No. 86 at p. 7.) This argument cannot sustain his motion to suppress.  Officer Ramos and Cruz both testified at the suppression hearing, providing consistent accounts of their interactions with Trinidad.  This Court has no reason to question their credibility.

### C.    Trinidad's <u>Miranda</u> Challenge

Trinidad moves to suppress his post-arrest statements to Officers Ramos and Cruz for two reasons.  (Docket No. 86 at pp. 12-15.)  First, Trinidad argues that he "never [made] a voluntary or knowing waiver of <u>Miranda</u> rights."  <u>Id.</u> at p. 12.  Second, he contends that refusing to "sign a Miranda waiver form in [*sic*] the same as invoking one's right to remain silent and not make a statement." <u>Id.</u> at p. 13.  Both arguments are meritless.

#### 1.    Trinidad Voluntarily Waived his <u>Miranda</u> Rights

The  Fifth  Amendment  of  the  United  States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend V.  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and its progeny

"require that law enforcement officers provide warnings concerning certain Fifth Amendment rights – including the right to remain silent and the right to consult an attorney – before interrogating a suspect in a custodial setting." United States v. Carpentino, 948 F.3d 10, 20 (1st Cir. 2020) (citation omitted).  Statements obtained in violation of Miranda are inadmissible.  Edwards v. Arizona, 451 U.S. 477, 484 (1981).

A suspect may, however, waive his or her Miranda rights.  United States v. Simpkins, 978 F.3d 1, 9-10 (1st Cir. 2020) (citation omitted).  "A Miranda waiver must be made knowingly, intelligently, and voluntarily."  United States v. Rang, 919 F.3d 113, 117 (1st Cir. 2019) (citation omitted).  Miranda waivers are subject to a two-pronged analysis.  United States v. Donald, 84 F.4th 59, 66 (1st Cir. 2023) (citing Moran v. Burbine, 475 U.S. 412, 421 (1986)).  First, "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  Moran, 475 U.S. at 421; see Lynumm v. Illinois, 372 U.S. 528, 534 (1963) (holding that "the question in each case is whether the defendant's will was overborne at the time he confessed").  Second, "the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of that decision."  Id.  Courts examine the

totality of the circumstances to determine whether a defendant
possessed the "requisite level of comprehension" to waive his or
her Miranda rights.  Id.  The United States shoulders the burden
of demonstrating a valid Miranda waiver.  Carpentino, 948 F.3d
at 26.

>     Trinidad maintains that the "totality of the
circumstances surrounding his arrest and nearly immediate
questioning show ample coercion and intimidating effects."
(Docket No. 86 at p. 11.)  He "[felt] intimidated" after Officers
Ramos and Cruz tackled him, discharged the taser gun, handcuffed
him, and placed him in the police vehicle.  Id.  Trinidad cites no
precedent, however, for the proposition that the discharge of a
taser negates a valid Miranda waiver.  In fact, precedent from
other jurisdictions establishes that the discharge of a taser gun,
without more, does not diminish a defendant's capacity to waive
his or her Miranda rights.  See United States v. Jackson, Case
No. 01-08, 2009 U.S. Dist. LEXIS 123354, at *6 (D. Mo. Apr. 30,
2009) (rejecting the defendant's argument "that after having been
subjected to a 50,000-volt taser, the defendant was in no condition
to [waive his Miranda rights]"); United States v. Patterson, Case
No. 09-07, 2009 U.S. Dist. LEXIS 154819, at *15 (M.D. Fla. June 22,
2009) (rejecting the defendant's argument that "the Taser
discharge and his alleged intoxication interfered with his mental

capacity to appreciate the consequences of waving his [Miranda] rights"); United States v. Mack, Case No. 07-238, 2009 U.S. Dist. LEXIS 17290, at *4 (M.D. La. Mar. 6, 2009) (rejecting the defendant's argument that "the administration of the taser three times created a coercive environment that led to the inculpatory statements").

The totality of the circumstances in this case establishes that Trinidad knowingly and voluntarily waived his Miranda rights. After Officers Ramos and Cruz discharged the taser gun and restrained Trinidad, inclement weather prevented them from completing the Miranda warnings. Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *5-6. Trinidad informed the officers that "he did not have a visa to be in the United States." Id. Subsequently, Officers Ramos and Cruz Mirandized Trinidad. Id. Trinidad refused to sign the waiver form, but "expressed that [the officers] could ask him questions." Id. at *6. These facts fail to demonstrate that Trinidad lacked the "requisite level of comprehension" to waive his Fifth Amendment right to remain silent. Moran, 475 U.S. at 421. Accordingly, this Court concurs with the magistrate judge's conclusion that Trinidad's "post-arrest statements to PRPD agents (pertaining to not having a visa to be in the United States and not possessing a firearm license) were not elicited in

violation of [his] rights." Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *16.[3]

### 2.    Trinidad's Refusal to Sign the Miranda Form

Trinidad's second Miranda argument fares no better than the first.  According to Trinidad, he invoked his right to remain silent by refusing to sign the Miranda form.  (Docket No. 86 at p. 13.)  This proposition is incorrect.  Courts consider the totality of the circumstances in determining whether a Miranda waiver is valid.  See Supra Part C(1).  A defendant's refusal to sign a Miranda form is not dispositive of the Court's waiver inquiry.  United States v. Zamora, 42 F. Supp. 3d 397, 402 (N.D.N.Y. 2014) (citing United States v. Plugh, 648 F.3d 118, 127-28 (2d Cir. 2011) (holding that although the defendant refused to sign a Miranda form, he nonetheless waived his right to remain silent "when he chose to begin speaking with custodial agents")).  Indeed, "courts have directly held that an unequivocal refusal to sign a waiver of right form is 'not necessarily equivalent to an

---

[3] The R&R also notes that "[even] if we assume that the original verbal Miranda warnings [. . .] were insufficient, the questions pertaining to place of origin or a valid Puerto Rico identification [. . .] are routine booking questions and not part of an interrogation."  Trinidad-Nova, 2024 U.S. Dist. LEXIS 11202, at *16 (citing United States v. Sánchez, 817 F.3d 38, 44-45 (1st Cir. 2016).  Routine booking question are "not intended to elicit statements," falling beyond the purview of the Miranda protections.  Id. (citing Pennsylvania v. Muñiz, 496 U.S. 582, 600-02 (1990) (questions regarding the defendant's biographical information did not constitute a custodial interrogation)).  This conclusion is legally sound and supported by the evidence presented at the suppression hearing.

unambiguous decision to invoke them.'" United States v. Beach,
Case No. 02-19, 2021 U.S. Dist. LEXIS 61081, at *9 (D. Me. Mar. 30,
2021) (quoting Plugh, 648 F.3d at 125); see North Carolina v.
Butler, 441 U.S. 369, 375 n.5 (1979) (noting that all contemporary
circuit decisions have "rejected the [. . .] argument that refusal
to sign a written waiver form precludes a finding of waiver").

   The Supreme Court has held that an "implicit waiver
of the right to remain silent is sufficient to admit a suspect's
statement into evidence." Berghuis v. Thompkins, 560 U.S. 370,
384 (2010) (citation and internal quotation omitted). An implicit
waiver occurs when, after receiving the Miranda warnings, a
defendant continues to speak with law enforcement officers. Id.
at 389 ("Understanding his rights in full, he waived his right to
remain silent by making a voluntary statement to the police. The
police, moreover, were not required to obtain a waiver of [the
defendant's] right to remain silent before interrogating him.");
United States v. Martínez, Case No.17-160, 2022 U.S. Dist. LEXIS
115484, at *37-38 (D.P.R. June 28, 2022) (holding that "although
Defendant's waivers were not express during either interview with
Officer Serrano, his act of continuing to speak to Officer Serrano
during both interviews indicated implicit waiver") (Domínguez,
J.).

Trinidad refused to sign the <u>Miranda</u> form, but informed Officer Cruz that "she could ask whatever she wanted." <u>Trinidad-Nova</u>, 2014 U.S. Dist. LEXIS 11202, at *6. He then informed the officers that he did not possess a firearms license. <u>Id.</u> Trinidad made this voluntary statement on his own accord. Accordingly, the circumstances in this case demonstrate that Trinidad waived his right to remain silent. <u>See, e.g.</u>, <u>United States v. Speaks</u>, 453 F.2d 966, 968-69 (1st Cir. 1972) ("Appellant refused to sign the form, but stated he fully understood his rights and wanted to speak with [the officer . . .] In the circumstances of this case, the refusal to sign the form did not indicate a desire to remain silent.").

**D.   Trinidad's Exclusionary Rule Argument**

Trinidad's final argument rests on the assumption that Officers Ramos and Cruz conducted an unlawful search and seizure. (Docket No. 86 at p. 13.) He seeks suppression of "any and all statements allegedly obtained from him following his arrest." <u>Id.</u> at p. 14. Trinidad's request is based on a false premise. Because no Fourth Amendment violation occurred, suppression of the firearm and post-arrest statements is not warranted.

**IV.   Conclusion**

For the reasons set forth above, the Court **ADOPTS** the magistrate judge's report and recommendation that Trinidad's

motion to suppress be denied.   (Docket No. 77.)   Accordingly,

Trinidad's motion to suppress is **DENIED**.   (Docket No. 25.)

      **IT IS SO ORDERED.**

San Juan, Puerto Rico, April 16, 2024.

                    s/ Francisco A. Besosa
                    FRANCISCO A. BESOSA
                    UNITED STATES DISTRICT JUDGE