UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL No. 22-419 (FAB) |
| ELIGIO TRINIDAD-NOVA, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

**I.   PROCEDURAL BACKGROUND**

On September 28, 2022, a federal grand jury indicted Eligio Trinidad-Nova ("Trinidad-Nova" or "Defendant") on one count of knowingly possessing a firearm and ammunition as an alien unlawfully in the United States in violation of 18 U.S.C. § 922(g)(5) ("Section 922(g)(5)") and one count of improper entry by an alien in violation of 8 U.S.C. § 1325. ECF No. 12. On December 16, 2022, Trinidad-Nova moved to dismiss count one of the indictment, arguing that Section 922(g)(5) is a facially unconstitutional violation of the Second Amendment. ECF No. 24. On April 25, 2023, the Court denied Trinidad-Nova's motion to dismiss. ECF No. 41. On July 29, 2024, in light of the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. ----, 144 S.Ct. 1889 (2024), Trinidad-Nova requested reconsideration of said order denying the motion to dismiss. ECF. 95. On August 1, 2024, Trinidad-Nova submitted a second motion to dismiss. ECF No. 97. The United States responded to both motions. ECF. Nos. 108, 109. Trinidad-Nova's motion for reconsideration and second motion to dismiss were referred to the undersigned for a report and recommendation. ECF No. 105. The undersigned issued a report recommending that Trinidad-Nova's motion for reconsideration and second motion to dismiss be denied. ECF No. 110. On

December 20, 2024, the Court adopted the report and recommendation. ECF No. 114. Accordingly, Trinidad-Nova's motion for reconsideration and second motion to dismiss were denied.

On January 29, 2025, Trinidad-Nova filed a third motion to dismiss count one, arguing this time that Section 922(g)(5) is unconstitutional *as applied* to him and requesting an evidentiary hearing on the subject. ECF No. 117. The Government responded on January 31, 2025. ECF No. 119. Trinidad Nova's third motion to dismiss and request for an evidentiary hearing has been referred to the undersigned for a report and recommendation. ECF Nos. 118, 121. For the following reasons, it is recommended that Trinidad-Nova's third motion to dismiss be DENIED.

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). One such motion, relevant here, is a motion to dismiss a count of an indictment. Regardless of whether a defendant moves to dismiss an indictment in its entirety or just specific counts, courts apply the same standards. *See e.g., United States v. Santana-Mendoza,* 2024 WL 4452290, at *1 (D.P.R. Oct. 9, 2024); *United States v. Delgado-Carmona*, 2023 WL 8622836 at *1 (D.P.R. Dec. 12, 2023). Beyond technical defects and cases of misconduct, a federal court can exercise its supervisory power and supplant the grand jury's "fundamental role" by dismissing an indictment only in "extremely limited circumstances." *Whitehouse v. U.S. Dist. Ct. for Dist. Of R.I.*, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 2540, 263 (1998)).

When considering whether to dismiss a count of an indictment, a court "must accept the allegations in the indictment as true." *United States v. Bravo-Fernández*, 756 F.Supp 2d 184

2

(D.P.R. 2010). Further, "the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (citation omitted). *See also United States v. Guerrier*, 669 F.3d 1, 3-4 (1st Cir. 2011) (citing *United States v. Eirby*, 262 F.3d 31, 37, 38 (1st Cir. 2001)). However, the court may consider pretrial motions to dismiss an indictment "where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." *United States v. Musso*, 914 F.3d 26,30 (1st Cir. 2019) (quoting *United States v. Weaver*, 659 F.3d 353, 355 n* (4th Cir. 2011)).

If a defendant's challenge as to the validity of an indictment involves the constitutionality of the statute authorizing the charges, such a challenge may be facial or as-applied. *United States v. Carter*, 752 F.3d 8, 12 (1st Cir. 2014); *United States v. Fulcar*, 701 F.Supp.3d 49 (D. Mass. 2023). To succeed in a facial attack, the moving party must demonstrate "that the statute lacks any 'plainly legitimate sweep.'" *Hightower v. City of Bos.*, 693 F.3d 61, 77-78 (1st Cir. 2012) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). On the other hand, to succeed in an as-applied challenge, the defendant must show that the statute is unconstitutional as applied to the circumstances of his case. *Id.* at 71-72.

Either way, "dismissing a [count of an] indictment is an extraordinary step," *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)), because, by returning an indictment, a grand jury is carrying out a constitutionally sanctioned function. *See* U.S. CONST. AM. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...."). "When a federal court uses its supervisory power to dismiss an indictment, it directly encroaches upon the

3

fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse*, 53 F.3d at 1360 (citing *Bank of Nova Scotia*, 487 U.S. at 263).

### III.  ANALYSIS

Trinidad-Nova moves the Court to dismiss Count One of his indictment on grounds that Section 922(g)(5) is unconstitutional as applied to him because it violates his Second Amendment right to bear arms. Specifically, Trinidad-Nova argues that the "Government has not alleged that he is dangerous in any way, shape, form or fashion," and that "[t]he presence of a specific and identifiable danger held in nexus with the possession of a firearm is required before an individual may be disarmed consistent with the Second Amendment." ECF No. 117 at 6. In support of this contention, Trinidad-Nova reincorporates the arguments in his second motion to dismiss and motion for reconsideration in which he asserts that the holding in *Rahimi*, rejecting a *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) challenge to the federal statute prohibiting the possession of a firearm by a person subject to a restraining order (18 U.S.C. § 922(g)(8)) ("Section 922(g)(8)"), requires a specific finding of dangerousness for Section 922(g)(5) prosecutions. *Id.* at 3; *see also* ECF Nos. 24, 95, 113. However, as previously discussed in the report and recommendation adopted by the Court, applying *Rahimi*'s specificity holding in a Section 922(g)(8) case to an entirely different context, *i.e.* a Section 922(g)(5) prosecution, is inappropriate. ECF No. 110 at 8. Trinidad-Nova, in his third motion to dismiss, analogizes Section 922(g)(5) to yet another prohibition, this time, Section 922(g)(3), which prohibits the possession of firearms or ammunition by an unlawful user or addict of a controlled substance. 18 U.S.C. § 922(g)(3) ("Section 922(g)(3)"). For the following reasons, Defendant's third motion to dismiss should be denied.

Trinidad-Nova argues, relying on recent Fifth Circuit cases *United States v. Daniels*, 124 F.4th 967 (5th Cir. 2025) *petition for cert. filed* (June 5, 2025) (No. 24-1248) and *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024), that a specific finding of dangerousness is required in a Section 922(g)(5) prosecution. In both cases, the defendants were, by definition, "unlawful user[s]" of a controlled substance, but they were not, at the time of their firearms possession, under the influence. *Daniels*, 124 F.4th at 970; *Connelly*, 117 F.4th at 282. The *Connelly* court held that "[t]he history and tradition before us support, at most, a ban on carrying firearms while an individual is *presently* under the influence." 117 F.4th at 282 (emphasis in original). Relying on this holding, the *Daniels* court reversed a Section 922(g)(3) conviction "because the jury did not necessarily find that Daniels was presently or even recently engaged in unlawful drug use." 124 F.4th at 970.

Trinidad-Nova's argument that these Fifth Circuit holdings regarding Section 922(g)(3) should guide the analysis in a Section 922(g)(5) case meets the same fate as his argument regarding Section 922(g)(8). These Fifth Circuit holdings were specific to the challenged regulation and applying those holdings to a different context is an approach that cannot be undertaken automatically. The court in *Connelly* was concerned with the fact that "[t]he statutory term 'unlawful user' captures regular marijuana users, but the temporal nexus is most generously described as vague – it does not specify how recently an individual must 'use' drugs to qualify for the prohibition." 117 F.4th at 282. Defendant argues that *Connelly*'s holding regarding a temporal nexus between use of narcotics and possession of a firearm requires the Government in this case to show that Defendant was "specifically dangerous for purposes of the 922(g)(5) prohibition." ECF No. 117 at 5. *Connelly* distinguishes the person who possesses firearms while actively intoxicated from the person that has been an unlawful user but is not under the influence at the

5

time that firearms are possessed. Furthermore, as discussed in *Daniels*, *Connelly* left the door open for prosecutions where the government can demonstrate that the frequency and degree of drug use is so intense that it renders the person continually impaired. *Daniels*, 124 F.4th at 978. Regardless, *Connelly*'s holding is not applicable to a Section 922(g)(5) prohibition. Section 922(g)(5)'s only requirements are that the defendant be "illegally or unlawfully in the United States" and that the defendant "…possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(5)(A). 18 U.S.C. § 922(g)(5). The temporal nexus requirement in *Connelly*, however, is not applicable to an alien unlawfully in the United States. An illegal immigration status is not comparable to the status of an "unlawful user, " because as the Government contends, "a person can cease to be addicted or be an unlawful user of a controlled substance in a way that is different from being an illegal alien. In other words, being an illegal alien is a status that is less subject to change than being an unlawful user or addict of a controlled substance." ECF No. 119 at 6. Thus, the Government need not show that Trinidad-Nova was specifically dangerous, and no evidentiary hearing is necessary to present evidence regarding Defendant's specific danger, or absence thereof.

In support of his argument regarding a finding of specific dangerousness, Defendant also asserts that "[n]ot all undocumented persons are dangerous or in any way 'present a credible threat to the physical safety of others." ECF No. 117 at 5 (citing *Rahimi*, 602 U.S. at 700). Implicit in this statement is a reincorporation of Defendant's arguments raised in his second motion to dismiss regarding *Rahimi*'s holding that, in a Section 922(g)(8) prosecution, a Second Amendment right may only be burdened once a defendant has been found to "pose a credible threat to the physical safety of others." 602 U.S. at 700. The previous report and recommendation issued by the

6

undersigned (adopted by the Court, ECF No. 114 at 7) analyzed this argument and recommended that *Rahimi*'s holding be circumscribed to the context of Section 922(g)(8) and found not applicable to the case at hand. ECF No. 110 at 7-9. *Bruen* analysis is an inherently specific inquiry, tailored to the facts of each case.

> The test turns on an analysis of this the United States' historical tradition of firearm regulation as applied to the restriction challenged. That analysis will necessarily be different depending on the particular regulation contested, as "[w]hy and how the regulation burdens the right are central to this inquiry." *Bruen*, 597 U.S. 1 at 29. *Rahimi* made this even more clear, stressing that "if laws at the founding regulated firearm use to address *particular problems*, that will be a strong indicator that contemporary laws imposing *similar restrictions for similar reasons* fall within a permissible category of regulations." 144 S.Ct. at 1898 (emphasis added). As Justice Barrett emphasized in her concurrence, "imposing a test that demands overly specific analogues has serious problems." *Id*. at 1925.

ECF No. 110 at 8. Just as *Rahimi*'s historical analysis was specific to Section 922(g)(8), the historical analysis and holding in *Daniels* and *Connelly* was specific to Section 922(g)(3). The court in *Connelly* applied the *Bruen* two-step test in analyzing the prohibition as applied to the defendant and found that the prohibition imposed a far greater burden on the defendant's Second Amendments Rights than our history and tradition of firearms regulation can support. *Connelly*, 117 F. 4th at 282. In *Connelly*, the Government could identify "no class of persons at the Founding who were 'dangerous' for reasons comparable to marijuana users." *Id*. at 277. Even so, the court noted an "undeniable throughline" running through our history suggesting that Founding-era governments took away guns from those perceived to be dangerous. *Id*. at 278.

The previous report and recommendation issued by the undersigned analyzed Section 922(g)(5) under the *Bruen* framework for Second Amendment challenges, recommending that the Court find the statute consistent with the United States' historical tradition of firearm regulations. ECF No. 110 at 12-16. The Court, in its opinion and order, adopted the report's reasoning of accepting historical analogues of disarmament of "nonmembers of the political community," who

were seen as "threatening or suspect to the colonial social order,"[1] while acknowledging "the inherent difficulty faced by jurists in relying on historical precedent steeped in discriminatory animus to assess the constitutionality of modern legislation." ECF No. 114 at 9. As previously discussed by the Court:

> From the stated purpose of the amendments that included what would become section 922(g)(5), the Court must infer that Congress believed that disarming aliens illegally or unlawfully in the United States would enhance law enforcement's ability to fight violent crime and narcotics trafficking. *Congress, thus, to some degree, and without differentiating between them, deemed aliens without legal status to be untrustworthy and in need of disarming*, akin to those groups disarmed at the time of the founding. It is surely a generalization to suggest, as courts do, that unlawfully present aliens, as a group, pose a greater threat to public safety, but general laws deal in generalities.

*United States v. Vizcaíno-Peguero*, 671 F. Supp 3d. 124, 129 (D.P.R. 2023) (Besosa, J.) (emphasis added) (cleaned up). Thus, Section 922(g)(5) does not require, as Trinidad-Nova contends, that the Government show that the Defendant was involved in violent crime and narcotics trafficking. ECF No. 117 at 5. Not all undocumented individuals are dangerous *per se*. Nor do undocumented individuals need to be dangerous to justify disarmament. Instead, this is a rationale for the "ends served by [Section] 922(g)(5)," as it prevents "individuals who live outside the law from possessing guns" and "assist[s] the government in regulating firearm trafficking by preventing those who are beyond the federal government's control from distributing and purchasing guns." *United States v. Pérez*, 6 F.4th 448, 455 (2nd Cir. 2021).

The only new question in this third motion to dismiss is whether the provision is unconstitutional as applied to the facts of Defendant's own case. As previously discussed, the only requirements under Section 922(g)(5) are that the defendant be an alien illegally or unlawfully in the United States and be in possession of a firearm or ammunition shipped or transported in

---

[1] ECF No. 110 at 18 (citing ECF No. 41 at 9-10).

interstate or foreign commerce, which is what count one of the indictment charges. 18 U.S.C. § 922(g)(5). The invitation to demand a particularized showing of dangerousness in these circumstances should be declined. Hence, Trinidad-Nova's third motion to dismiss and request for an evidentiary hearing should be DENIED.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 10th day of July, 2025.

s/Marcos E. López  
U.S. Magistrate Judge