IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff**,

           **v.**

ELIGIO TRINIDAD-NOVA,

    **Defendant.**

**Criminal No.** 22-419 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court are defendant Eligio Trinidad-Nova ("Trinidad")'s objections to the Report and Recommendation ("R&R") issued by Magistrate Judge Marcos E. López (the "magistrate judge") (Docket No. 122), concerning Trinidad's third motion to dismiss the indictment. (Docket No. 128.) For the reasons set forth below, the Court **ADOPTS** the R&R *in toto*. Accordingly, Trinidad's third motion to dismiss is **DENIED**. (Docket No. 117.)

**I.   Background**

A grand jury returned an indictment on September 29, 2022, charging Trinidad with being a prohibited person (an alien) in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(5)(A) (count one), and improper entry into the United States by an alien, in violation of 8 U.S.C. § 1325(a)(1) (count two). (Docket No. 12.) The events leading to Trinidad's arrest

Criminal No. 22-419 (FAB)                                                          2

and indictment are summarized in the April 16, 2024 Opinion and Order.  See United States v. Trinidad-Nova, 731 F. Supp. 3d 273, 277-78 (D.P.R. 2024) (Besosa, J.).

Trinidad's current motion to dismiss is his third.  In his first motion, he sought dismissal of count one of the indictment, claiming that section 922(g)(5) was a facially unconstitutional restriction on his Second Amendment right to bear arms.  (Docket No. 24.)  The Court denied his motion after finding, under N.Y. State Rifle & Pistol Ass'n v. Bruen,[1] that the statute bore sufficient analogy to firearm regulations which prevailed in the founding era to avoid facially conflicting with the Second Amendment.  Docket No. 41; United States v. Trinidad-Nova, 671 F. Supp. 3d 118 (D.P.R. 2023) (Besosa, J.).  The Court came to this conclusion after analyzing the government's historical evidence and finding that "there is a tradition of disarming certain groups seen as threatening or suspect to the colonial social order." Trinidad-Nova, 671 F. Supp. 3d at 123.

In his second motion to dismiss, Trinidad argued that count one violated his Fifth Amendment due process and equal protection rights.  (Docket No. 97.)  In a separate filing, he also sought reconsideration of the Court's order denying his first motion to

---

[1] 597 U.S. 1, 142 S. Ct. 2111 (2022).

dismiss.  (Docket No. 95.)  The Court referred Trinidad's second motion to dismiss and motion for reconsideration to a magistrate judge (Docket No. 105), who issued a report and recommendation on October 18, 2024.  (Docket No. 110.)  The magistrate judge recommended denying both the second motion to dismiss and the motion for reconsideration, and the Court adopted these recommendations *in toto*.  Docket No. 114; United States v. Trinidad-Nova, 760 F. Supp. 3d 1 (D.P.R. 2024) (Besosa, J.).

Trinidad's third motion to dismiss, which is the one currently before the Court, brings an "as-applied" constitutional argument against count one.  (Docket No. 117.)  Trinidad argues that section 922(g)(5)(A) is unconstitutional as applied to him because there was no allegation "that he was specifically dangerous for the purposes of the 922(g)(5) prohibition – that is, that he was engaged in narcotic or violent crime." Id. at p. 5.  Supporting this argument, Trinidad refers to United States v. Connelly, 117 F.4th 269 (5th Cir. 2024) and United States v. Daniels, 124 F.4th 967 (5th Cir. 2025),[2] in which the Fifth Circuit Court of Appeals found that firearm possession charges against a non-violent, occasional user of controlled substances who was not actively intoxicated were not consistent with the historical tradition of

---

[2] The logic in Daniels largely follows Connelly, and for the sake of simplicity the Court will refer only to Connelly going forward.

firearm regulation in the United States.  According to Trinidad, absent a showing that he is threatening or suspect to the American social order, section 922(g)(5)(A)'s application exceeds the scope of historical firearm regulation and unconstitutionally violates his Second Amendment right to bear arms.  (Docket No. 117 at p. 5.)

The government opposed his motion, arguing that all that is needed for a conviction under section 922(g)(5)(A) is a finding that a defendant was illegally present in the United States when he or she possessed the firearm, a fact which Trinidad does not dispute.  (Docket No. 119 at p. 5.)  The government argues that no specific finding of dangerousness to the social order is required because Trinidad's status as an unlawful immigrant alone suffices to justify his disarmament based on founding-era traditions.  Id. at pp. 4-5.  Because the historical tradition of gun regulation from the founding era permitted disarmament of outsiders, the government claims that there is no Second Amendment issue, despite Trinidad's claim to have otherwise been a law-abiding member of the community for twenty years.

The magistrate judge agreed with the government.  (Docket No. 122.)  The magistrate judge found that Trinidad's attempt to analogize section 922(g)(5)(A) to section 922(g)(3) was not persuasive, concluding that Connelly is inapplicable in the section 922(g)(5)(A) context.  Id. at pp. 4-8.  The magistrate

judge concluded that the Second Amendment, applied in the context of section 922(g)(5)(A), does not require a showing that the defendant was dangerous.  Id. at p. 6.  All that is required is that the defendant was illegally present in the United States when he or she possessed the firearm.  Id.  Since Trinidad entered Puerto Rico illegally, the government did not need to show that he was dangerous to justify disarmament.  (Docket No. 122 at p. 8.)

Trinidad objects to the report and recommendation (Docket No. 128), and the government did not respond.  He argues that the magistrate judge erred in concluding that section 922(g)(5)(A) is constitutional as applied to him.  The core of his objection is that the Second Amendment cannot permit Congress to take away a person's firearm when that person has been peacefully present in the United States for nearly twenty years, despite having entered illegally.  Id. at pp. 3-6.  He argues that he should qualify as a member of "the people" protected by the Second Amendment, and that it is constitutionally insufficient for Congress to disarm members of "the people" without some showing of individual dangerousness or disloyalty.  Id.

Trinidad also raises two specific objections to the R&R.  First, he objects to "the magistrate [judge]'s persistence in using political membership as a basis at Bruen's step two to disarm an undocumented person such as Mr. Trinidad when the Court has already

assumed [] that he is a member of 'the people' under the Second Amendment." Id. at pp. 3-4.  Second, he argues that the magistrate judge improperly injected "means-end scrutiny" into his analysis, despite Bruen's clear instruction to move away from it.  Id.; see Bruen, 597 U.S. at 19-24.

## II. Legal Standard

A district court may refer a pending motion to a magistrate judge for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(a); Loc. Rule 72(b).  A party may file written objections to the magistrate judge's R&R within 14 days of publication.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); Loc. Rule 72(d).

A party that files a timely objection is entitled to "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  An issue not raised before the magistrate judge may be deemed waived by the district court.  Borden v. Sec. of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); see also Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate.").

Criminal No. 22-419 (FAB)                                                    7

In conducting its review, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see Loc. R. 72(d); Álamo-Rodríguez v. Pfizer Pharms., Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. See Templeman v. Chris Craft Corp., 770 F.2d 245, 247-48 (1st Cir. 1985); Hernández-Mejías v. Gen. Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.).

**III. Discussion**

    **A.   Trinidad's As-Applied Challenge**

A defendant can challenge the constitutionality of a criminal statute under which he or she is charged by bringing either a "facial" or an "as-applied" challenge. As the name suggests, a facial challenge involves showing that the statute is unconstitutional "on its face" without reference to the defendant's individual circumstances. See Lukaszczyk v. Cook Cnty., 137 F.4th 671, 673 (7th Cir. 2025) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."). On the other hand,

Criminal No. 22-419 (FAB)                                              8

"an as-applied challenge is based on a developed factual record and the application of a statute to a specific person."  United States v. Santos-Santana, Crim. No. 23-311 (GMM), 2024 U.S. Dist. LEXIS 7290, at *5 (D.P.R. Jan. 8, 2024) (Méndez-Miró, J.)  In an as-applied challenge, the defendant need only show that the statute is unconstitutional as applied to him, regardless of whether it might be constitutional if applied to others.

Trinidad previously raised, and the Court rejected, an argument that section 922(g)(5)(A) is facially unconstitutional.[3] Trinidad-Nova, 671 F. Supp. 3d at 122-24.  The current as-applied challenge involves considering whether section 922(g)(5)(A) is unconstitutional when applied to Trinidad specifically – a peaceful, long-term resident of Puerto Rico who entered illegally decades ago.[4]  Following Bruen, section 922(g)(5)(A) is constitutional as applied to Trinidad only if the government can demonstrate that his disarmament is "consistent with the Nation's historical tradition of firearm regulation."  Bruen, 597 U.S. at 24.

---

[3] To avoid piecemeal consideration, the Court discourages splitting arguments across multiple motions to dismiss when they could have been presented in the same motion.

[4] At this stage in the proceedings, the government has not contested Trinidad's asseverations about his background.  The Court takes Trinidad's statements as true for purposes of evaluating his motion to dismiss because doing so does not affect the outcome.

As an initial matter, the Court agrees with the magistrate judge's finding that Connelly is not directly relevant in the present context.  (Docket No. 122 at pp. 5-6.)  Bruen analysis is necessarily regulation-specific.  Connelly deals with the historical basis for disarming those who unlawfully use controlled substances, while this case involves considering the historical basis for disarming unlawful immigrants.  As the magistrate judge explained, "illegal immigration status is not comparable to the status of an unlawful user [of controlled substances], because as the Government contends, a person can cease to be addicted or be an unlawful user of controlled substance[s] in a way that is different from being an illegal alien."  (Docket No. 122 at p. 6.)

Connelly does, however, illustrate an important feature of the Bruen test – "a court must be careful not to read a principle at such a high level of generality that it waters down the right." United States v. Rahimi, 602 U.S. 680, 740, 144 S. Ct. 1889 (2024) (Barrett, J., concurring).  In Connelly, the court found that historical laws disarming people who were actively intoxicated could not be generalized to justify disarmament of someone who used intoxicating substances at some point in the past, but was not actively intoxicated when disarmed.  See Connelly, 117 F.4th

Criminal No. 22-419 (FAB)                                            10

at 279-82.[5]  The government could not get around this distinction by arguing that the historical and modern laws are based on the same general principle of disarming the intoxicated.

      Moving to Trinidad's as-applied challenge, this Court previously found that the government's proffered historical analogues support the notion that "there is a tradition of disarming certain groups seen as threatening or suspect to the colonial social order." Trinidad-Nova, 671 F. Supp. 3d at 123. Massachusetts and Virginia forbade arming Native Americans. Id. at 122.  Virginia prohibited Catholics from owning arms unless they swore an oath of allegiance to the Hanoverian dynasty and the Protestant succession.  Id.  And several colonial governments disarmed persons who refused to swear an oath of allegiance to the state or the United States.  Id.  The question underlying Trinidad's as-applied challenge is whether the historical analogues support disarmament in his individual circumstances. Trinidad claims they do not, at least without a showing that he is dangerous or disloyal.  See Docket No. 128 at p. 4-6 ("Having developed sufficient connection to the national community,

---

[5] Connelly found section 922(g)(3) unconstitutional as applied to defendant Connelly, but rejected her facial constitutional challenge on the ground that "the Government need only demonstrate that Section 922(g)(3) is constitutional in some of its applications" and that "there are indeed some sets of circumstances where § 922(g)(3) would be valid, such as banning presently intoxicated persons from carrying weapons."  117 F.4th at 282.

Criminal No. 22-419 (FAB)                                                11

[Trinidad] is not threatening or suspect to the social order in any comparative manner to those classes of people that were disarmed at the time of the Founding.")

To give credit to his argument, the historical laws cited by the government do not show that the founders disarmed every foreigner. Instead, only certain groups of people "associated with foreign elements" were disarmed. Trinidad-Nova, 671 F. Supp. 3d 118, 123 (citation omitted). Each of the cited historical disarmament laws arose in contexts where the sovereignty of the colonial government was being challenged by foreign powers, and in each case, the laws targeted groups possessing a characteristic linking them to the foreign power. See Pierret-Mercedes, 731 F. Supp. 3d at 306 ("Catholics were subject to disarmament in England and the colonies because of their perceived threat to the stability of the country (having recently switched from a Catholic to a Protestant monarch) and the war effort against France in the colonies"); id. at 307 (noting that the oath-of-allegiance disarmament laws "were specific to a unique moment in the history of the country" and were aimed at "disarming loyalists during the Revolutionary War"); id. at 308 (noting with respect to Native Americans, that "the disarmament reflected by many of these laws and ordinances was likely based on the persistent state of conflict between the native inhabitants of the continent and the colonists,

Criminal No. 22-419 (FAB)                                                 12

not to mention the racial animosity such conflicts engendered."). That is, there was an active conflict with a foreign power which gave the colonial government a reason to perceive the groups they disarmed as potentially disloyal and threatening in a way that illegal entry, on its own, is a poor analogue for.  The disarmament of someone like Trinidad, with his decades of peaceful presence in the community, would not align with this understanding of the historical tradition of firearm regulation.

On the other hand, the historical record could be construed to outline a broader principle that "one's alien status carried with it a smaller basket of rights" and that "governments have consistently conditioned the right to bear arms on one's allegiance to the sovereign." United States v. Carbajal-Flores, 143 F.4th 877, 883, 887-88 (7th Cir. 2025). Based on this general principle, because a foreigner's allegiance to the United States could not be presumed (unlike a citizen's), the founders could condition a foreigner's Second Amendment rights on an affirmative expression of allegiance.  Analogously, today's Congress can condition a foreigner's Second Amendment rights on naturalization or legal entry, which are "the imperfect system[s] the United States has set up as a proxy for national allegiance." United States v. Leveille, 659 F. Supp. 3d 1279, 1285 (D.N.M. 2023). Although the founders may not have consistently disarmed all

Criminal No. 22-419 (FAB)                                              13

foreigners pending a showing of allegiance, that does not mean they believed they lacked the right to do so. This would "assume[] that founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority." Rahimi, 602 U.S. at 739-40 (Barrett, J., concurring).

To summarize, the historical record shows that the founders disarmed certain people who were "associated with foreign elements." Trinidad-Nova, 671 F. Supp. 3d at 123 (citation omitted). Interpreted narrowly, the historical record provides direct support for disarming only those with links to a hostile foreign power during an armed conflict, which would exclude Trinidad. The historical record, however, may be more broadly construed to evince a general principle that firearm possession rights could be conditioned on national allegiance. Under this second theory, a foreigner who enters the country illegally fails to satisfy a constitutionally valid precondition for these rights, even if, like Trinidad, they have lived peacefully in the community for twenty years.

The second theory gives the government substantial latitude in justifying its current regulation by drawing a general principle from historical precedents. Nonetheless, this theory is clearly favored before courts that have considered similar as-

applied challenges to section 922(g)(5)(A).  Every court in this district faced with a similar challenge upheld the statute's constitutionality by adopting this theory.  See United States v. Vizcaíno-Peguero, 671 F. Supp. 3d 124 (D.P.R. 2023) (Besosa, J.); United States v. Santos-Santana, Crim. No. 23-311 (GMM), 2024 U.S. Dist. LEXIS 7290 (D.P.R. Jan. 8, 2024) (Méndez-Miró, J.); United States v. Pierret-Mercedes, 731 F. Supp. 3d 284 (D.P.R. 2024) (Delgado-Colón, J.).  So have the vast majority of other district courts.  See, e.g., United States v. Spence, No. 24-cr-20233, 2025 U.S. Dist. LEXIS 145140 (E.D. Mich. Jul. 29, 2025); United States v. Serrano-Restrepo, No. 2:24-cr-107, 2024 U.S. Dist. LEXIS 212076 (S.D. Ohio Nov. 21, 2024); United States v. Bernabe-Martínez, 1:22-cr-00276-AKB-1, 2024 U.S. Dist. LEXIS 34464 (D. Idaho Feb. 26, 2024); Leveille, 659 F. Supp. 3d 1279 (D.M.N. 2023); but see United States v. Osorio, No. 2:24-cr-00040-NT, 2024 U.S. Dist. LEXIS 185826 (D. Me. Oct. 11, 2024) (finding that the historical analogues fail to establish that Congress can disarm a peaceful, longtime resident unlawful immigrant consistent with the Second Amendment).  And the only circuit-level court to consider a similar as-applied challenge on the merits reached the conclusion that Second Amendment rights may be conditioned on allegiance to the United States.  See Carbajal-Flores, 143 F.4th at 887-88

Criminal No. 22-419 (FAB)                                            15

("[G]overnments have consistently conditioned the right to bear arms on one's allegiance to the sovereign.")[6]

The Court recognizes the weight of authority on this question and concludes that section 922(g)(5)(A) is constitutional as applied to Trinidad. Accordingly, the Trinidad's objection to the R&R concerning his as-applied challenge is rejected, and the magistrate judge's recommendation denying his motion to dismiss on this ground is **ADOPTED**.

B. **Trinidad's Objections to the R&R**

In addition to his as-applied challenge, Trinidad makes two specific objections to the R&R. First, he objects to "the magistrate [judge]'s persistence in using political membership as a basis at Bruen's step two to disarm an undocumented person such as Mr. Trinidad when the Court has already assumed [] that he is a member of 'the people' under the Second Amendment." See Docket No. 128 at pp. 3-4. Second, he argues that the magistrate judge

---

[6] Other circuit courts have rejected as-applied constitutional challenges to section 922(g)(5)(A) on other grounds. See United States v. Medina-Cantu, 113 F.4th 537, 541-42 (5th Cir. 2024) (rejecting defendant's as-applied challenge by concluding that unlawful immigrants are not protected by the Second Amendment because they are not members of "the people"); United States v. Sitladeen, 64 F.4th 978, 983-87 (8th Cir. 2023) (same); United States v. Rangel-Tapia, No. 23-1220, 2024 U.S. App. LEXIS 5591, at *7-9 (6th Cir. Mar. 6, 2024) (Second Amendment argument was not raised at the district level, and finding no plain error in concluding that section 922(g)(5)(A) was constitutional as applied to Rangel-Tapia because "no circuit court has declared [it] unconstitutional and no binding law in our circuit answers the question presented") (internal alterations omitted). Although the First Circuit has not issued an opinion on this issue, the Osorio case from the District of Maine is currently on appeal.

Criminal No. 22-419 (FAB)                                              16

impermissibly "inject[ed] means-end scrutiny" into his Second Amendment analysis.  Id.  Neither objection has merit.

In his first objection, Trinidad argues that the magistrate judge erred in finding that "nonmembers of the political community" who were seen as "threatening or suspect to the colonial social order" could be disarmed.  Trinidad claims that this conclusion is inconsistent with the Court's earlier assumption that at least some unlawful immigrants are members of "the people" protected by the Second Amendment.  See Trinidad-Nova, 671 F. Supp. 3d at 121-22.  This objection is meritless.  In its previous opinion, the Court merely assumed that some unlawful immigrants qualified as members of "the people" because authority was divided on this question and arriving at an answer was unnecessary.  See id. at 122 ("Because Bruen step two can similarly resolve the question presented, the Court will follow the path trod by those circuit courts of appeals and assume without deciding that the Second Amendment applies here and proceed to the next analysis.")  To be clear, the Court has made no affirmative finding on the scope of "the people" and whether it includes Trinidad.  Although the questions of whether an unlawful immigrant is a member of "the people" and whether the historical tradition allows them to be

Criminal No. 22-419 (FAB)                                                   17

disarmed might be similar,[7] the Court's analysis of the latter stands on its own.

As for Trinidad's means-end scrutiny objection, it appears to be based on the following passage from the R&R:

> Section 922(g)(5) does not require, as Trinidad-Nova contends, that the Government show that the Defendant was involved in violent crime and narcotics trafficking. Not all undocumented individuals are dangerous *per se*. Nor do undocumented individuals need to be dangerous to justify disarmament. Instead, this is a rationale for the "ends served by [Section] 922(g)(5)," as it prevents "individuals who live outside the law from possessing guns" and "assist[s] the government in regulating firearm trafficking by preventing those who are beyond the federal government's control from distributing and purchasing guns." United States v. Pérez, 6 F.4th 448, 455 (2nd Cir. 2021).

(Docket No. 122 at p. 8.) (internal citation omitted). The magistrate judge seems to suggest that the lack of an individualized finding of dangerousness is consistent with the policy ends served by section 922(g)(5)(A) – even if an unlawful immigrant is not dangerous, it still makes sense policy-wise to prevent him from possessing a firearm in order to help the government prevent firearm trafficking.

---

[7] See United States v. Sing-Ledezma, 706 F. Supp. 3d 650, 659 (W.D. Tex. 2023) (noting that the questions of whether someone is included in "the people" and whether their disarmament is consistent with the nation's historical tradition of firearm regulation "are functionally identical, collapsing into a single inquiry"), overturned on other grounds, 2024 U.S. App. LEXIS 33305 (5th Cir. Nov. 6, 2024).

Criminal No. 22-419 (FAB)                                                    18

      The Court finds that this passing reference to policy ends does not cast doubt on the validity of the magistrate judge's conclusion.  As discussed earlier with respect to Trinidad's as-applied challenge, the historical tradition supports disarmament based on illegal entry into the United States.  See supra pp. 7-15.  To the extent the magistrate judge was influenced by a means-end argument to uphold the constitutionality of section 922(g)(5)(A) as applied to Trinidad, his conclusion is independently supported by the historical tradition, rendering any error harmless.  Therefore, Trinidad's second objection to the R&R is also meritless.

## IV. Conclusion

    For the reasons set forth above, the Court **ADOPTS** the magistrate judge's report and recommendation.  (Docket No. 122.)  Accordingly, Trinidad's third motion to dismiss is **DENIED**.  (Docket No. 117.)

    **IT IS SO ORDERED.**

    San Juan, Puerto Rico, September 29, 2025.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        SENIOR UNITED STATES DISTRICT JUDGE